**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN**

MIGUEL SANTANA-LOPEZ,

      Plaintiff,

v.                      Case No. 03-C-0976

DR. JUAN, DR. W. KRIEGER, DR. PANNKE,
DR. RAJTORA, DR. SLUSS and DR. SORRELLS,

      Defendants.

## DECISION AND ORDER

  Plaintiff, Miguel Santana-Lopez, filed this *pro se* civil rights complaint under 42 U.S.C. § 1983 and is proceeding *in forma pauperis* on claims that the defendants denied him adequate medical care in violation of the Eighth Amendment. Currently pending is a motion for summary judgment filed by defendants Dr. Pannke, Dr. Rajtora, Dr. Sluss and Dr. Sorrells.

### I. FACTUAL BACKGROUND

  The plaintiff filed this complaint on October 8, 2003, against defendants Daniel Bertrand and St. Vincent Hospital. The complaint was subsequently screened and defendants Bertrand and St. Vincent Hospital were dismissed. On March 8 and May 12, 2004, the plaintiff filed amended complaints naming Dr. Juan, Dr. John Doe, Sergeant Mercier, Dr. W. Krieger and Dr. Metodio Reyes as defendants. Then, on February 3, 2005, the plaintiff filed an amended complaint adding defendants Daniel Fiore, M.D., Tom Haberstein, Randy Miller, Thomas S. Pannke, M.D., Timothy Rajtora, M.D., Michael P. Sluss, M.D., and Christopher C. Sorrells, M.D. to this action.

On April 7, 2005, the complaint was screened and the plaintiff was permitted to proceed on claims that defendants Haberstein and Miller caused the plaintiff injury by placing him in an MRI machine while wearing metal restraints and that defendants Dr. Krieger, Dr. Sorrells, Dr. Pannke, Dr. Sluss, Dr. Rajtora, Dr. Fiore, Dr. Juan and Dr. Reyes were deliberately indifferent to the plaintiff's medical needs relating to injuries sustained in the MRI incident. Also on that date, defendants Mercier and Doe were dismissed.

On May 18, 2005, defendants Dr. Pannke, Dr. Rajtora, Dr. Sluss and Dr. Sorrells filed a motion to dismiss arguing that this action is barred under the statute of limitations, and on August 31, 2005, they filed a motion to dismiss for lack of diligence. By order of March 22, 2006, both motions were denied. On that same day, the court issued a scheduling order setting July 28, 2006, as the deadline for filing dispositive motions. Defendants Dr. Pannke, Dr. Rajtora, Dr. Sluss and Dr. Sorrells filed the instant motion for summary judgment on June 9, 2006.

By order of July 14, 2006, the plaintiff was given an extension of time until August 21, 2006, in which to file a response to the defendants' motion for summary judgment. However, on August 10, 2006, the plaintiff filed a motion to voluntarily dismiss this case without prejudice. Defendants Dr. Reyes, Dr. Fiore, Haberstein and Miller did not oppose the plaintiff's request and they were dismissed on January 9, 2007. However, defendants Dr. Pannke, Dr. Rajtora, Dr. Sluss and Dr. Sorrells objected to dismissal of this action without prejudice inasmuch as the parties had already engaged in discovery and extensive motion practice. Thus, the plaintiff was ordered to file a response to the defendants' motion for summary judgment on or before January 31, 2007.

The plaintiff filed a motion for extension of time in which to file a response to the defendants' motion on January 29, 2007. In its January 31, 2007, order, this court granted the plaintiff an extension of time until February 22, 2007, in which to file his response and warned the plaintiff that failure to file any response could result in dismissal of this action with prejudice. To date, no response has been filed.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is required "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The mere existence of some factual dispute does not defeat a summary judgment motion; "the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). For a dispute to be genuine, the evidence must be such that a "reasonable jury could return a verdict for the nonmoving party." *Id.* For the fact to be material, it must relate to a dispute that "might affect the outcome of the suit." *Id.*

Although summary judgment is a useful tool for isolating and terminating factually unsupported claims, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986), courts should act with caution in granting summary judgment, *Anderson*, 477 U.S. at 255. When the evidence presented shows a dispute over facts that might affect the outcome of the suit under governing law, summary judgment must be denied. *Id.* at 248.

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323. Where the moving party seeks summary

3

judgment on the ground that there is an absence of evidence to support the nonmoving party's case, the moving party may satisfy its initial burden simply by pointing out the absence of evidence. *Id.* at 325. Once the moving party's initial burden is met, the nonmoving party must "go beyond the pleadings" and designate specific facts to support each element of the cause of action, showing a genuine issue for trial. *Id.* at 323-24. Neither party may rest on mere allegations or denials in the pleadings, *Anderson*, 477 U.S. at 248, or upon conclusory statements in affidavits, *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (1989).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, it is "not required to draw every conceivable inference from the record - only those inferences that are reasonable." *Bank Leumi Le-Israel, B.M. v. Lee*, 928 F.2d 232, 236 (7th Cir. 1991).

### III. PRELIMINARY MATTERS

As discussed above, the plaintiff has failed to file a response to the defendants' motion for summary judgment. A district court cannot properly rule upon a motion for summary judgment without providing the opposing party a "reasonable opportunity" to contradict the material facts asserted by the movant. *Lewis v. Faulkner*, 689 F.2d 100, 101 (7th Cir. 1982). This means that a *pro se* prisoner, who is a plaintiff in a civil case, is entitled to receive notice of the consequences of failing to respond to a motion for summary judgment or to a motion to dismiss supported by affidavits. *Id.*

4

In this case, counsel for the defendants provided plaintiff with the required notice statement. The plaintiff was also provided with the text of Federal Rules of Civil Procedure 56(e) and (f), as well as Civil Local Rules 7.1, 56.1 and 56.2 (E.D. Wis.). In addition, the plaintiff received a warning from the court informing him of the consequences of failing to respond to the defendants' motion as well as several extensions of time in which to file any response. For these reasons, the court finds that the plaintiff has been given notice and a fair opportunity to present counter-affidavits or other evidence in opposition to the defendant's motion. Despite these warnings and opportunities, however, the plaintiff has failed to file any response. Accordingly, the bulk of the defendants' summary judgment materials must be considered undisputed.

An initial comment is also necessary with respect to the claims advanced against defendants Dr. Sorrells, Dr. Pannke, Dr. Sluss and Dr. Rajtora. By order of April 7, 2005, the plaintiff was permitted to proceed on claims that defendants Dr. Sorrells, Dr. Pannke, Dr. Sluss and Dr. Rajtora were deliberately indifferent to injuries the plaintiff experienced as a result of being placed in an MRI machine while wearing metal restraints. (*See* Order of April 7, 2005, at 1-2). However, a close reading of the February 3, 2005, amended complaint reveals that the plaintiff actually claims that Dr. Sorrells, Dr. Pannke and Dr. Sluss were responsible for placing the plaintiff in the MRI machine on December 22, 1998, (*see* Complaint of Feb. 3, 2005, at 9), and that Dr. Rajtora was deliberately indifferent to the injuries the plaintiff suffered as a result of the MRI incident. *Id.* at 10.

Finally, the court notes that defendants Dr. Juan and Dr. Krieger have never been served. Under Rule 4 of the Federal Rules of Civil Procedure, a complaint must be served upon the

5

defendants within 120 days after the filing of the complaint unless the plaintiff can show "good cause" for his failure to effect service. *See* Fed. R.Civ.P. 4(m). The Marshals Service is required to serve process on behalf of individuals proceeding *in forma pauperis*. *See* Fed. R. Civ. P. 4(c)(2). When the district court instructs the Marshal to serve papers on behalf of a prisoner, the prisoner need furnish no more than the information necessary to identify the defendant. *Sellers v. United States*, 902 F.2d 598, 602 (7th Cir. 1990). The Marshals Service's failure to complete service, once provided with the necessary identifying information, is automatically "good cause" for an extension of time under Rule 4(m). *Antonelli v. Sheahan*, 81 F.3d 1422, 1426 (7th Cir. 1995)(remanding inmate's § 1983 action for evaluation of whether inmate, proceeding *in forma pauperis*, provided insufficient information to allow marshals to serve process).

In the present case, the court granted the plaintiff's motion to amend the complaint to add Dr. Juan and Dr. Krieger as defendants on May 26, 2004. The October 8, 2003, complaint and the plaintiff's letter of March 8, 2004, (which together comprise the original complaint), did not provide the Marshals Service with the addresses for Dr. Juan and Dr. Krieger. However, in his February 3, 2005, amended complaint, the plaintiff furnished the addresses for the last known workplaces of defendants Dr. Juan and Dr. Krieger. (*See* Complaint of Feb. 3, 2005, at 1-2). Waivers of service were returned unexecuted for Dr. Juan and Dr. Krieger on July 8, 2004. And, on May 31, 2005, summons were returned unexecuted for Dr. Juan and Dr. Krieger.

The summons issued for defendant Dr. Juan was returned unexecuted because he no longer works at Green Bay Correctional Institution and the prison had no information on his current location. It is unclear what efforts the Marshals Service attempted to ascertain Dr. Juan's

6

new address after the summons was returned unexecuted. Thus, the court is not persuaded at this stage of the proceedings that it is the plaintiff's fault that Dr. Juan has not been served. Therefore, the Marshals Service shall within thirty days provide the court with either: (1) Dr. Juan's current address, or (2) a detailed explanation of its efforts to locate Dr. Juan's current address.

As to defendant Dr. Krieger, there is no record of him ever being employed by St. Vincent Hospital. Thus, it appears the plaintiff's information is incorrect. And, because he has not supplied Dr. Krieger's first name, the information the plaintiff provided the Marshals Service is also incomplete. Inasmuch as the Marshals Service has unsuccessfully attempted to serve a waiver of service of summons and a summons on Dr. Krieger, without knowing his first name, and upon finding that there is no record of his being employed at St. Vincent's Hospital, they have satisfied their duty of making reasonable efforts to serve Dr. Krieger on the plaintiff's behalf. *See Antonelli*, 81 F.3d at 1426. Thus, defendant Dr. Krieger will be dismissed from this action.

## IV. RELEVANT UNDISPUTED FACTS

The plaintiff was incarcerated at Green Bay Correctional Institution (GBCI) when the alleged wrongdoing occurred. At all times relevant, Dr. Christopher C. Sorrells was a private practice emergency room physician employed by Emergency Physicians, Ltd. (Affidavit of Christopher C. Sorrells, M.D. [Sorrells Aff.] ¶ 10). Emergency Physicians contracts with St. Vincent Hospital to provide emergency room physician services. *Id*. Timothy Rajtora was an

internal medicine resident on rotation through the General Medicine Service at the University of Wisconsin Hospital & Clinics (UW). (Affidavit of Timothy Rajtora, M.D. [Rajtora Aff.] ¶ 2).

Dr. Thomas Panke is an emergency room physician and he was employed by Infinity Healthcare, S.C. at all times relevant. (Affidavit of Thomas Pannke, M.D. [Pannke Aff.] ¶ 5). Infinity Healthcare contracts with hospitals like St. Vincent Hospital to provide physician services. *Id*. Dr. Michael Sluss is a medical doctor specializing in neurology. (Affidavit of Michael Sluss, M.D. [Sluss Aff.] ¶ 1). On August 23, 2003, Dr. Sluss was employed by Prevea Clinic. (Affidavit of Michael Sluss, M.D. [Sluss Aff.] ¶ 8).

**Events of December 22, 1998**

On December 22, 1998, while at St. Nicholas Hospital, the plaintiff was placed in an MRI machine while wearing metal restraints. (Complaint of Oct. 8, 2003, at 3).[1] As a result, the plaintiff's legs, fingers, eyes and ears ruptured. *Id*. The plaintiff alleges that he lost his eyesight for a long time, he still experiences blurred vision and he lost the ability to walk on his own without the help of a walker. *Id*. Moreover, he contends that his fingers swelled up and ruptured, he lost movement in his fingers, his ears bled, he suffered pain in his auditory nerve and he has impaired hearing. (Complaint of Feb. 3, 2005, at 2-3).

On December 22, 1998, the plaintiff told Dr. Sorrells that he had degenerative back disease which had been painful for the previous year and had become worse in the week prior to his visit to the hospital. (Sorrells Aff. ¶ 3. The plaintiff presented with a fever of 104.5 degrees. *Id*. He also complained of an inability to urinate and numbness in his lower extremities. *Id*.

---

[1]According to the complaint, the plaintiff was treated at St. Vincent Hospital pursuant to a contract with GBCI. (Complaint of Feb. 3, 2005, at 9).

8

Dr. Sorrells diagnosed the plaintiff with acute febrile illness and acute lumbar pack pain. (Sorrells Aff. ¶ 7). Dr. Sorrells prescribed a course of treatment for the plaintiff that included obtaining x-rays of the plaintiff's abdomen, lab work and blood and urine cultures. (Sorrells Aff. ¶ 3). Dr. Sorrells also ordered an MRI of the plaintiff's lumbar spine. (Sorrells Aff. ¶ 4). Dr. Sorrells stayed at St. Vincent Hospital and did not accompany the plaintiff to the MRI Center where the MRI was performed. *Id*. Further, Dr. Sorrells has no knowledge of the plaintiff being placed in the MRI while wearing metal restraints. (Sorrells Aff. ¶ 5).

After the MRI, the plaintiff was transferred back to the emergency room where he remained neurologically and hemodynamically stable. (Sorrells Aff. ¶ 6). The plaintiff did not advise Dr. Sorrells that he had been placed in the MRI machine while wearing metal restraints. *Id*. Further, the plaintiff did not complain of a loss of vision or hearing, his ears were not bleeding and his fingers were not swollen or ruptured. (Sorrells Aff. ¶ 5). In contrast, after approximately 5 hours in the emergency room, the plaintiff was virtually pain free due and was discharged to be followed up by the prison physician. (Sorrells Aff. ¶ 7).

**Events of January 8, 1999**

Approximately two weeks later, on January 8, 1999, the plaintiff was admitted to the University of Wisconsin Hospital (UW) where he was treated on an inpatient basis until approximately January 13, 1999. (Rajtora Aff. ¶ 2). Dr. Rajtora was one of many physicians who provided the plaintiff medical care for his complaints of low back pain, athralgias (painful joints), dysuria (difficulty or painful urination), lesions on the hand, and bright, red, scratchy eyes. (Rajtora Aff. ¶ 3). At UW, the plaintiff received an extensive workup, including rhuematology,

9

opthamology and dermatology consults, lab work and blood cultures. *Id*. The plaintiff also had skin biopsy performed on the lesion on his finger, a culture taken from the aspirate of his wrist joint, a lumbar spine MRI and x-rays of the sacroiliac joints. *Id*.

The plaintiff was ultimately diagnosed with Reiter's syndrome. (Rajtora Aff. ¶ 3).[2] Treatment for Reiter's syndrome includes antibiotics and non-steroidal anti-inflamatory drugs (NSAIDS), both of which the plaintiff received. (Rajtora Aff. ¶ 4). The plaintiff responded dramatically to the NSAIDS and at the time he was discharged, he was greatly improved and able to move around. (Rajtora Aff. ¶ 5). The plaintiff did not tell Dr. Rajtora that he had been placed in an MRI machine while wearing metal restraints. (Rajtora Aff. ¶ 7). Nor was Dr. Rajtora informed that the plaintiff had been blind, bled from his ears or suffered hearing loss. *Id*.

**Events of August 26, 2003**

Approximately four and a half years later, on August 26, 2003, the plaintiff was treated by Dr. Pannke at the emergency room at St. Vincent Hospital. (Pannke Aff. ¶ 3). On that date, the plaintiff informed Dr. Pannke that he had a history of back problems dating back to 1987 when he was struck by a two ton object. (Pannke Aff. ¶ 5). The plaintiff had problems on and off since then, but recently experienced leg tremors and weakness which required him to use a walker. *Id*. The plaintiff did not advise Dr. Pannke that he had been placed in an MRI machine while wearing metal restraints and he did not complain to Dr. Pannke of bleeding of the ears, blindness or ruptured fingers. (Pannke Aff. ¶ 8).

---

[2]Reiter's syndrome is a diagnosis made by exclusion of other disorders. It can present with or cause three seemingly unrelated symptoms: arthritis, redness of the eyes and urinary tract symptoms. Reiter's syndrome is caused by an infection which is often sexually transmitted or passed through the gastrointestinal tract.

10

Dr. Pannke examined the plaintiff and noted that he suffered from back pain and leg tremors. (Panke Aff. ¶ 6). Dr. Pannke ordered a CT scan of the plaintiff's head and an MRI of his entire back. (Pannke Aff. ¶ 3; Ex. A at 4). Ultimately, Dr. Pannke diagnosed the plaintiff with acute/chronic progressive bilateral leg weakness and called Dr. Sluss for a neurological consult. (Pannke Aff. Ex. A at 4). Dr. Pannke never provided medical treatment to the plaintiff after referring him to Dr. Sluss. (Pannke Aff. ¶ 6).

Dr. Sluss saw the plaintiff on August 26, 2003. (Sluss Aff. ¶ 3). As part of the plaintiff's treatment, Dr. Sluss evaluated the results form the plaintiff's CT scan, which ruled out a stroke, and the results from the plaintiff's MRI, which showed: (1) moderate degenerative spondylosis involving the cervical spine; (2) moderate disc space narrowing at L5-S1 without significant stenosis; and (3) slight compression deformity of L1 and l2 which appeared old. (Sluss Aff. ¶ 5). There was no evidence of spinal cord compression or abnormal signal intensity within the spinal cord. *Id*.

Dr. Sluss also examined the plaintiff and did not find any current or acute injuries. (Sluss Aff. ¶ 6). The plaintiff denied numbness and tingling of his legs, weakness of his legs, bowel or bladder control difficulties or upper extremity problems. *Id*. Dr. Sluss was unable to find any organic cause for the tremors in the plaintiff's lower extremities. (Sluss Aff. ¶ 7).

### IV. ANALYSIS

The plaintiff alleges that Dr. Sorrells, Dr. Pannke and Dr. Sluss placed the plaintiff in the MRI machine while he was wearing metal restraints. Further, the plaintiff contends that Dr. Rajtora refused to treat him for the injuries he sustained as a result of the MRI incident. In

response, the defendants assert that this action should be dismissed because: (1) defendants Sorrells, Panke and Sluss are not state actors; (2) neither Dr. Sorrels, Dr. Pannke, Dr. Sluss or Dr. Rajtora was deliberately indifferent to the plaintiff's serious medical needs; and (3) this action is barred under the statute of limitations.

### 1.   State Actor Requirement

Defendants Dr. Sorrells, Dr. Pannke and Dr. Sluss assert that they are not state actors for purposes of § 1983. To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must allege: 1) that he was deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon him by a person acting under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). A private actor can held liable in a § 1983 action if he there is a sufficiently close nexus between the State and the private conduct so that the action "may be fairly treated as that of the State itself." *Blum v. Yaretsky,* 457 U.S. 991, 1004 (1982)(quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 349-50 (1974)). A sufficiently close nexus may be found where the state "effectively controls, or encourages the actions of a private party" or where the state delegates a "public function" to a private entity. *Wade v. Byles*, 83 F.3d 902, 905 (7th Cir. 1996).

In the present case, it is undisputed that defendants Dr. Sorrells, Dr. Pannke and Dr. Sluss are private physicians and not DOC employees. Specifically, Dr. Sorrells was employed as a private practice emergency room physician by Emergency Physicians, Ltd., Dr. Pannke was employed by Inifinity Healthcare, S.C., as a private practice physician and Dr. Sluss was a private practice physician employed by Prevea Clinic when the alleged wrongdoing occurred.

12

On the other hand, the complaint states that St. Vincent Hospital was under contract with Green Bay Correctional Institution to provide medical services to inmates. Moreover, it is not clear that St. Vincent Hospital was not performing a public function when they administered medical services to a state prisoner. Inasmuch as such doubts must be construed in favor of a *pro se* plaintiff, the court declines to dismiss this action on grounds that defendants Dr. Sorrells, Dr. Pannke and Dr. Sluss were not acting under color of law for § 1983 purposes.

### 2. Statute of Limitations

The defendants maintain that this action is barred under the statute of limitations. The statute of limitations for § 1983 actions in Wisconsin is six years. *Wudtke v. Davel*, 128 F.3d 1057, 1061 (7th Cir. 1997); *Gray v. Lacke*, 885 F.2d 399, 409 (7th Cir. 1989)). A § 1983 action accrues "when the plaintiff knows or should know that his or her constitutional rights have been violated." *Kelly v. City of Chicago*, 4 F.3d 509, 511 (7th Cir. 2003).

Here, the complaint against defendants Dr. Sorrells, Dr. Pannke Dr. Sluss and Dr. Rajtora was filed on February 3, 2005. The date of the alleged injury is December 22, 1998, when the plaintiff was placed in an MRI machine while wearing metal restraints. However, the plaintiff contends that he did not become aware of the danger of being placed in the MRI while wearing restraints until August 26, 2003, when he returned to St. Vincent Hospital and plastic restraints were used because hospital officials explained to him that wearing metal restraints in an MRI machine could kill him. (Oct. 8, 2003, Complaint at 6). For this reason, the court finds that the plaintiff was aware that his constitutional rights were violated on August 26, 2003, and not December 22, 1998. Thus, this action is not time-barred under Wisconsin's statute of limitations.

13

### 3. Eighth Amendment Claims

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001); *see also Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976); *Zentmyer v. Kendall County, Illinois*, 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Gutierrez*, 111 F.3d at 1373 (citations omitted). A medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim, providing the denial of medical care could result in further significant injury or in the unnecessary infliction of pain. *See Reed v. McBride*, 178 F.3d 849, 852-53 (7th Cir. 1999); *Gutierrez*, 111 F.3d at 1371.

In the present case, the parties are not in dispute that the plaintiff's injuries are sufficiently serious for Eighth Amendment purposes. Thus, the relevant inquiry is whether the defendants were deliberately indifferent to these serious medical needs. A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or

14

safety." *Farmer*, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." *Tesch v. County of Green Lake*, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. *See Salazar v. City of Chicago*, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001) (citing *Farmer*, 511 U.S. at 840-42). Even if he recognizes the substantial risk, an official is free from liability if he "responded reasonably to that risk even if the ultimate harm is not averted." *Farmer*, 511 U.S. at 843.

### A. Dr. Sorrells, Dr. Sluss and Dr. Pannke

The plaintiff contends that Dr. Sorrells, Dr. Sluss and Dr. Pannke placed him in an MRI machine while he was wearing metal restraints. Prison administrators are liable under § 1983 for failing to protect their charges only if they are deliberately indifferent, which means they knew of and disregarded an excessive risk to inmate safety. *See Farmer,* 511 U.S. at 837; *Pierson v. Hartley*, 391 F.3d 898, 901 (7th Cir. 2004). Under § 1983, a plaintiff must demonstrate that supervisory officials are personally responsible for alleged deprivations. *See Monell v. Dep't of Social Serv's*, 436 U.S. 658, 694 (1978); *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1995). Supervisory officials may be personally responsible for the constitutional torts of their subordinates only if the official knew of and facilitated, approved, condoned, or turned a blind eye to the conduct. *See Chavez v. Cady*, 207 F.3d 901, 906 (7th Cir. 2000); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

In the present case, it is undisputed that, although Dr. Sorrells treated the plaintiff on December 22, 1998, and ordered that an MRI be performed on the plaintiff's back, Dr. Sorrells did not accompany the plaintiff to the MRI Center or personally perform the MRI. Moreover, the plaintiff has not indicated that Dr. Sorrells was aware of, or approved of, the plaintiff being placed in the MRI machine while wearing metal restraints. Thus, the plaintiff has failed to demonstrate the requisite personal involvement of defendant Dr. Sorrells.

With respect to Dr. Sluss, it is undisputed that the only time he was asked to care for the plaintiff was on August 26, 2003, when Dr. Sluss saw the plaintiff in the emergency room at St. Vincent's Hospital. Therefore, the plaintiff has failed to show that Dr. Sluss placed the plaintiff into the MRI machine while he was wearing metal restraints.

Finally, it is undisputed that Dr. Pannke did not see or treat the plaintiff on December 22, 1998. The only date which Dr. Pannke treated the plaintiff was August 26, 2003, when Dr. Pannke saw the plaintiff in the emergency room at St. Vincent Hospital. Accordingly, the plaintiff has failed to show that Dr. Pannke was personally involved in placing the plaintiff in the MRI machine while he was wearing metal restraints.

**B.    Dr. Rajtora**

The plaintiff charges that Dr. Ratjora refused to admit that the plaintiff suffered injuries as a result of the MRI incident and instead treated the plaintiff for an unrelated disease. It is undisputed that Dr. Rajtora was not advised about the December 22, 1998, MRI incident. Dr. Rajtora was also not informed that the plaintiff lost his eyesight, that he continued to suffer

blurred vision, that fingers swelled and ruptured, that he had loss of movement in his fingers, that he had bleeding from his ears, auditory nerve pain or loss of hearing.

At UW, the plaintiff presented with low back pain, athralgias, dysuria, lesions on his hands and bright red, scratchy eyes, and he was ultimately diagnosed with Reiter's syndrome. He was treated with antibiotics and NSAIDS, to which he responded dramatically. At no time during the plaintiff's January hospitalization did Dr. Rajtora refuse to treat the plaintiff for any complaints of pain or suffering.

In light of the foregoing, the plaintiff has not shown that Dr. Rajtora was aware that the plaintiff had suffered a sufficiently serious injury from being placed in the MRI machine while wearing metal restraints and consciously disregarded it nonetheless. *Chapman*, 241 F.3d at 845. At most, the plaintiff's allegation against Dr. Rajtora amounts to a disagreement about the care the plaintiff was provided, which does not implicate the Eighth Amendment. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003)(disagreement with medical professionals about treatment needs does not state a cognizable Eighth Amendment claim under the deliberate indifference standard of *Estelle v. Gamble*, 429 U.S. 97 (1976)). Thus, the plaintiff has failed to make out an Eighth Amendment violation against Dr. Rajtora.

For the reasons discussed above, the plaintiff has failed to demonstrate that there is a genuine issue of material fact as to whether the defendants provided him adequate medical care as required under the Eighth Amendment. Thus, the motion for summary judgment filed by Dr. Sorrells, Dr. Pannke, Dr. Sluss and Dr. Rajtora will be granted.

As a final matter, by letter of March 1, 2007, counsel for defendants Dr. Reyes, Dr. Fiore, Tom Haberstein and Randy Miller (who have been dismissed) asks that the plaintiff's motion for summary judgment be dismissed. Review of the docket in this case reveals that the plaintiff has not filed a motion for summary judgment. Thus, this request will be denied.

**IT IS THEREFORE ORDERED** that the motion for summary judgment filed by defendants Dr. Sorrells, Dr. Pannke, Dr. Sluss and Dr. Rajtora (Doc. # 83) is **granted.**

**IT IS FURTHER ORDERED** that defendants Dr. W. Krieger, Dr. Sorrells, Dr. Pannke, Dr. Sluss and Dr. Rajtora are **dismissed.**

**IT IS FURTHER ORDERED** the Marshals Service shall within thirty days provide the court with either: (1) Dr. Juan's current address; or (2) a detailed explanation of its efforts to locate Dr. Juan's current address.

Dated at Milwaukee, Wisconsin, this 6th day of March, 2007.

          **SO ORDERED,**

          s/Rudolph T. Randa
          **HON. RUDOLPH T. RANDA**
          **Chief Judge**